# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JEROME DONALD GARSJO** and<br>**DONNA MAE GARSJO**,<br><br>Debtors. | Case No. **09-62271-7** |
| **LITTLE HORN STATE BANK**,<br><br>Plaintiff.<br><br>-vs-<br><br>**JEROME DONALD GARSJO** and<br>**DONNA MAE GARSJO**,<br><br>Defendants. | Adv No. **10-00012** |

# MEMORANDUM of DECISION

At Butte in said District this 30th day of September, 2010.

In this Adversary Proceeding, Defendant Donna Mae Garsjo ("Donna"), through counsel, filed a Motion for Summary Judgment on August 25, 2010. *See* docket entry no. 28. Donna's Motion for Summary Judgment is accompanied by a Memorandum in support thereof, an Affidavit of Donna, a Declaration of attorney James A. Patten, and a Statement of Uncontroverted Facts. The following are Donna's purported uncontroverted facts and the Plaintiff's statement of genuine issues:

1

## STATEMENTS OF UNCONTROVERTED FACTS/GENUINE ISSUES

1. Donna Garsjo at no time met with any employee or representative of Plaintiff Little Horn Bank with respect to the loans at issue in the case including the Promissory Note, Personal Guaranty and Security Agreements.  Defendant's answer to Plaintiff's Interrogatory No. 38 (¶ 14, 16, 17, 23, 29), 22.  Plaintiff's answer to Defendant's Interrogatory No. 1.  Garsjo Affidavit ¶¶ 5, 7, 8.

2. Donna Garsjo had only one telephone conversation with a loan officer at Little Horn Bank regarding the release of lien on the mobile home so that it could be sold and the proceeds used to acquire another home.  Defendant's Answer to Plaintiff's Interrogatory Nos. 32 and 33.

3. Little Horn Bank made no request for [sic] that the title of the mobile home be delivered to it or that Donna Garsjo take any action to assist Little Horn Bank in perfecting its security interest in the mobile home.  Defendant's answer to Plaintiff Interrogatories No. 38 (¶ 2, 3, 26, 27, 30).  Garsjo Affidavit ¶¶ 7 and 8.

4. Donna Garsjo made no representation to the Bank except those contained in the security agreements and personal guaranties. With respect to delivery of the title, Donna Garsjo agreed to assist the Bank at its request, but it made no request.  Plaintiff's answer to Defendants' Interrogatories 3, 4, 7, 8 and 13.  Defendant's answer to Plaintiff Interrogatories Nos. 33,35, and Interrogatory Nos. 4, 8, and 9.  Garsjo Affidavit ¶¶5 and 8.

5. Donna Garsjo has complied with all requests made by Little Horn Bank regarding title to the mobile home through the date of the commencement of this bankruptcy case.  Garsjo Affidavit ¶ 6.

6. Little Horn Bank did not perfect its security interest in the mobile home by filing

2

appropriate documentation with the Montana Registrar of Motor Vehicles and Little Horn Bank does not appear on the title to the mobile home as a lien holder.  Defendant Answer to Plaintiff's Interrogatory No. 38 (¶ 37).  Attorney's Declaration with attached title.

Little Horn State Bank ("LHSB") controverts: (1) Donna's Uncontroverted Fact No. 3 regarding LHSB allegedly making no requests that Donna take actions regarding LHSB's security interest in the 1997 HIG MH, Serial No. HL6656AB (the "Mobile Home"); (2) Donna's Uncontroverted Fact No. 4 with respect to Donna supposedly agreeing to assist LHSB regarding title delivery; and (3) Donna's Uncontroverted Fact No. 5 with respect to Donna's assertion that she complied with all requests made by LHSB regarding title to the Mobile Home.  In support of the foregoing, LHSB maintains that the following raise genuine issues of fact:

1.  On January 24, 2007, Jerome Donald Garsjo ("Jerome"), on behalf of his business called J&S Auto Sales, took two loans from LHSB: Promissory Note No. 709688 in the amount of $600,000.00 ("Note 1") and Promissory Note No. 709691 in the amount of $13,128.88 ("Note 2") and related loan documents.

2.  Note 1 and Note 2 were not repaid and went into default.

3.  An investigation by the FBI determined that LHSB had been the victim of bank fraud by Jerome who had engaged in fraudulent dealings with the J & S Auto Sales inventory resulting in losses to LHSB, totaling $358,384.56 after liquidation of inventory collateral.

4.  Jerome was convicted of bank fraud in the United States District Court for the District of Montana and is now serving time in prison for this fraud.

5.  There are two items of collateral that remain, which were to secure the indebtedness to LHSB -- the Mobile Home and a real property lot described as Lot 1, Block 8 of Lampman

3

Subdivision, City of Billings, 2901 Georgina Dr. (the "Lot").

6.   As a result of the Chapter 7 bankruptcy filed by the above-named debtors and prepetition litigation, LHSB's efforts to obtain recovery from these two items of collateral have been thwarted.

7.   On January 24, 2007, in order to induce LHSB to loan Notes 1 and 2, Jerome and Donna signed two Commercial Security Agreements granting to Plaintiff a security interest in two mobile homes, one identified as a 1999 Classic Trailer and the second was the Mobile Home, which is the subject of this Adversary Proceeding.

8.   On January 24, 2007, in order to induce LHSB to loan Notes 1 and 2, Donna signed a Commercial Guaranty in which she agreed to be personally liable for payment and performance of Notes 1 and 2.

9.   On January 24, 2007, to induce LHSB to loan Notes 1 and 2, Donna, as grantor signed a Deed of Trust granting to LHSB a security interest in all her right, title and interest in the Lot. The Deed of Trust was to secure the obligations under Notes 1 and 2.

10.   Shortly after the loan closing for Note 1 and Note 2 on January 24, 2007, Jerome delivered a Colorado title for the Mobile Home to LHSB.  This title did not comply with the Security Agreement in that it was in Donna's sole name and was not a Montana title. LHSB understood and expected that Jerome and Donna would obtain a Montana title for the Mobile Home in accordance with the Security Agreement, in both of their names, and then provide the title to LHSB so that LHSB could perfect its security interest in the collateral. LHSB gave the Colorado title to Jerome in accordance with this understanding.

11.   LHSB's understanding was based upon the express terms of the Security Agreement.

4

12.   Neither of the Garsjos delivered the Montana title for the Mobile Home to LHSB. Instead, in March 2008, LHSB learned through an inquiry to the Montana Motor Vehicle Division that Donna had transferred title to the Mobile Home to the Garsjos' daughter Julie Dawn Hornby. Neither of the Garjos told LHSB about this transfer.

13.   LHSB also learned that Donna had transferred the Lot to Julie Dawn Hornby. Neither of the Garsjos told LHSB about this transfer.

14.   On May 20, 2008, LHSB filed a Complaint in the Montana Thirteenth Judicial District Court, Yellowstone County, Civil Cause No. 08-0735 (the "District Court Litigation"), against Jerome and Donna for breach of contract, wrongful conversion, actual fraud, constructive fraud, fraudulent transfer and attorney fees.  The Complaint was served on Donna.

15.   Donna and Jerome were represented by attorney James A. Patten in the District Court Litigation.

16.   The fraudulent transfer count of the Complaint in the District Court Litigation described Donna's failure to provide the Montana title for the Mobile Home to LHSB, the wrongful transfer of her interest in the Mobile Home to Ms. Hornby, and demanded that Donna be enjoined from transfers of the Mobile Home and that she deliver all of the collateral, including the Mobile Home to LHSB.

17. The Complaint in the District Court Litigation also stated that Donna had fraudulently transferred the lot to Ms. Hornby and that Donna's transfer of the Lot should be avoided and that LHSB should be allowed to foreclose on the Lot.

18.   During this District Court Litigation LHSB's attorney contacted Ms. Hornby about these transfers, which resulted in her signing a quitclaim deed for the Lot, transferring it back to

Donna. LHSB learned later from the Motor Vehicle Division that this communication also resulted in the title for the Mobile Home being reissued in Donna's name. However, Donna did not inform LHSB that the title to the Mobile Home had been issued in her name and did not deliver the title to the Mobile Home to LHSB for recording of its security interest, despite the District Court litigation and the demands in the Complaint.

19.   The Security Agreement covering the Mobile Home has several warranties and representations that LHSB relied upon: that Donna and Jerome held good and marketable title to the Mobile Home, that she would deliver to LHSB all documents evidencing title to the Mobile Home, that she would take whatever action requested by LHSB to perfect and continue LHSB's security interest in the Mobile Home, that she would defend LHSB's rights in the Mobile Home, that she would keep the Mobile Home free and clear of all liens and encumbrances, that she would neither take nor permit any action that would require application for certificates of title for the Mobile Home outside the State of Montana.

20.   By her signature on the Security Agreement, Donna led LHSB to believe and understand that she intended that these warranties and representations would be relied upon by LHSB.

21.   LHSB believed, relied upon, and had every reasonable right to believe in and rely upon the representations made by Donna with respect to the Mobile Home.

22.   LHSB did not know that Donna's representations about the Mobile Home were untrue. LHSB expected that Donna would deliver the Montana title to the Mobile Home to LHSB and that she would not transfer the Mobile Home title to her daughter.

23.   Donna's representations to LHSB regarding the title to the Mobile Home were false

6

as was her intentional withholding of information about the true status of the title to the Mobile Home.

24.   Donna's conduct in transferring ownership of the Lot to her daughter was similarly contrary to her commitments to LHSB under the Deed of Trust and her intentional withholding information about her transfer and the true status of the ownership of the Lot were intentional.

25.   Donna's conduct in transferring the Mobile Home and the Lot to her daughter in violation of her warranties, representations, and obligations to LHSB were a pattern and practice of intentional misconduct.

26.   When Donna was served with the District Court Complaint, she was put on notice by LHSB that she had fraudulently transferred title to the Lot and the Mobile Home and that LHSB had demanded that she comply with the Commercial Security Agreement and allow LHSB to exercise its collateral rights concerning the Lot and Mobile Home.

27.   Although Donna knew, at least by the time that the District Court Complaint was served on her, that she had acted improperly regarding the Lot and the Mobile Home title, she never delivered the Mobile Home title to LHSB. Rather, she contested the District Court Litigation and then before it was resolved, she and Jerome filed this Chapter 7 bankruptcy case.

28.   As of this date, Donna remains in possession and claims ownership of the Mobile Home free and clear of LHSB's lien.

29.   At no time did Donna offer to assist LHSB with respect to delivery of title to the Mobile Home.

30.   Donna's transfers of the Mobile Home title and failure to deliver it to LHSB prevented, hindered, and delayed LHSB's recording of its lien on the Mobile Home title.

7

31.  As a result of Donna's fraudulent conduct in failing to deliver either the title to the Mobile Home or the Mobile Home itself so that it could be liquidated to reduce the debt, she has caused damages of $36,000.00 to LHSB, being the value of the Mobile Home as Donna has admitted in her discovery answers and in her bankruptcy schedules.

## SUMMARY JUDGMENT

Summary judgment is governed by F.R.B.P. 7056.  Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a

9

grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

### 11 U.S.C. § 523(a)(2)(A)

It is well-settled that the Bankruptcy Code's central purpose is to provide a fresh start to the honest but unfortunate debtor. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, under certain circumstances, a creditor may seek to except from a debtor's discharge certain debts. *See* 11 U.S.C. §§ 523(a). However, "[i]n order to avoid unjustifiably impairing a debtor's fresh start," exceptions to discharge under § 523 are to be narrowly construed. *Ghomeshi v. Sabban (In re Sabban),* 600 F.3d 12919, 1222 (9th Cir. 2010). *See also, Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). Notwithstanding the weighty burden, a creditor, in order to prevail, need only establish the elements of

10

nondischargeability under 11 U.S.C. § 523, by a preponderance of the evidence.   *See Grogan v. Garner*, 498 U.S. at 287-88.

To establish nondischargeability as a result of fraud under § 523(a)(2)(A)[1], courts in the Ninth Circuit employ the following five-part test:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
> (2) knowledge of the falsity or deceptiveness of his statement or conduct;
> (3) an intent to deceive;
> (4) justifiable reliance by the creditor on the debtor's statement or conduct; and
> (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*In re Sabban,* 600 F.3d at 1222; *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001*); American Express Travel Related Services Co. Inc. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996).  The determination of nondischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of § 523(a)(2)(A) mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the Restatement (Second) of Torts (1976) §§ 525-557A.  *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443-44, 133 L.Ed.2d 351 (1995) ("'false pretenses, a false representation, or actual fraud,'. . . are common-law terms, and...in the case of 'actual

---

[1]  11 U.S.C. § 523(a)(2)(A) reads:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

* * *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

fraud,'...they imply elements that the common law has defined them to include.").

### 1.   Intent to Deceive

The first three elements of § 523(a)(2)(A), when taken together, establish the element of intent to deceive, which the creditor must establish by a preponderance of the evidence.  In other words, a creditor must establish that a debtor knowingly made a false representation, either express or implied, with the intent of deceiving the creditor.  In a two-party transaction, as distinguished from a three-party credit card transaction, the alleging party must prove the elements of misrepresentation and reliance directly and by a preponderance of the evidence and not by reference to the totality of the circumstances.  *Compare Turtle Rock Meadows Homeowners Assoc. v. Slyman (In re Slyman)*, 234 F.3d 1081, 1086 (9th Cir. 2000) *with Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).  As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case, answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation–reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements–causation.

### 2.   Reliance

A creditor must establish that it relied on the false representations made by the debtor.  *Field*, 116 S.Ct at 438 (1995).  Such reliance need not be reasonable, but it must be justifiable.  *Id*.  As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'"  *Id*. at 444 (quoting § 540 Restatement (Second) of Torts (1976)).  This standard depends upon the knowledge and experience of the person to whom the representations were

made.  As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies
> upon a misrepresentation the falsity of which would be patent to him if he had
> utilized his opportunity to make a cursory examination or investigation.  Thus, if
> one induces another to buy a horse by representing it to be sound, the purchaser
> cannot recover even though the horse has but one eye, if the horse is shown to the
> purchaser before he buys it and the slightest inspection would have disclosed the
> defect.  On the other hand, the rule stated in this Section applies only when the
> recipient of the misrepresentation is capable of appreciating its falsity at the time
> by the use of his senses.  Thus, a defect that any experienced horseman would at
> once recognize at first glance may not be patent to a person who has had no
> experience with horses."

*Id*. (quoting § 541, Comment a., RESTATEMENT (SECOND) OF TORTS (1976)).  Interpreting this

standard, the Ninth Circuit Court of Appeals teaches:  "Although one cannot close his eyes and

blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense

for fraud."  *Apte*, 96 F.3d at 1322.

### 3.  Causation

Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim

sought to be discharged arose from an injury proximately resulting from his or her reliance on a

representation that was made with the intent to deceive.  *Britton v. Price (In re Britton)*, 950 F.2d

602, 604 (9th Cir. 1991).  "Proximate cause is sometimes said to depend on whether the conduct

has been so significant and important a cause that the defendant should be legally responsible."

*Id*. at 604.  Moreover, as the United States Supreme Court explained in *Field*, a court may turn to

the Restatement (Second) of Torts (1976), "the most widely accepted distillation of the common

law of torts" for guidance on this issue.  *Field*, 116 S.Ct. at 443.

The RESTATEMENT (SECOND) OF TORTS (1976) explains that proximate cause entails (1)

causation in fact, which requires a defendant's misrepresentations to be a "substantial factor in

determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance."  § 548A.  *See also In re Creta*, 271 B.R. 214, 220 (1ˢᵗ Cir. BAP 2002).  In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud.  *Siriani v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. (In re Siriani),* 967 F.2d 302, 306 (9th Cir. 1992).

### 11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debt for money obtained by the use of a written statement concerning a debtor's (or insider's) financial condition.  The statute reads:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

> * * *

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

> * * *

> (B) use of a statement in writing–
>   (i) that is materially false;
>   (ii) respecting the debtor's or an insider's financial condition;
>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>   (iv) that the debtor caused to be made or published with intent to deceive[.]

The Ninth Circuit has reworded these requirements as follows:

> (1) a representation of fact by the debtor,
> (2) that was material,
> (3) that the debtor knew at the time to be false,
> (4) that the debtor made with the intention of deceiving the creditor,
> (5) upon which the creditor relied,

14

(6) that the creditor's reliance was reasonable,

(7) that damage proximately resulted from the representation.

*Siriani v. Northwestern Nat'l Ins. Co., of Milwaukee, Wis. (In re Siriani)*, 967 F.2d 302, (9th Cir. 1992); *In re Gertsch*, 237 B.R. 160, 167 (9th Cir. BAP 1999) (adopting the elements required under the companion section 523(a)(2)(A), with the additional and obvious requirement that the alleged fraud stem from a false statement in writing); *Candland v. Insurance Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *Avco Fin. Services of Billings v. Kidd (In re Kidd)*, 219 B.R. 278, 282 (Bankr. D. Mont. 1998); *In re Osborne*, 257 B.R. 14, 20 (Bankr. C.D. Cal. 2000).

In discussing the difference between §§ 523(a)(2)(A) and 523(a)(2)(B), the Supreme Court instructs that § 523(a)(2)(B) applies where the debt at issue "follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." *Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).  On the issue of materiality, a financial statement that leaves "any discrepancy" between the overall impression left by the statement and the endorser's true financial status gives rise to a material falsehood for purposes of § 523(a)(2)(B).  *North Park Credit v. Harmer (In re Harmer)*, 61 B.R. 1, 5 (Bankr. D.Utah 1984) (citing cases); *accord Texas Am. Bank, Tyler, N.A. v. Barron, (In re Barron)*, 126 B.R. 255 (Bankr. E.D. Texas 1991) (citing cases).  A "long line of cases" has held that in a personal financial statement, the "omission, concealment, or understatement of any of [a] debtor's material liabilities constitutes a 'materially false' statement."  *Harmer*, 61 B.R. at 5.

Moreover, even if a debtor does not know of inaccuracies contained in a written financial

15

statement, the Ninth Circuit has held that reckless disregard for the truth satisfies the knowledge element of § 523 and its predecessor. *Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996). *See also Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 492 (6th Cir. 1986) (gross recklessness to the truth also satisfies the fourth element of intention of deceiving).

## DISCUSSION

As discussed earlier, Donna bears a heavy burden to show that there are no disputed facts warranting disposition of this Adversary Proceeding on the law without trial. Summary judgment is not proper if a rational trier of fact might resolve the pending dispute between Donna and LHSB in favor of LHSB. After reviewing Donna's statement of uncontroverted facts, LHSB's statement of genuine issues and the applicable law, the Court concludes that Donna is not entitled to summary judgment.

Under either § 523(a)(2)(A) or § 523(a)(2)(B), a creditor must establish that a debtor knowingly made either a false representation, either express or implied, or a false statement in writing, with the intent of deceiving the creditor. In this case, Donna admittedly signed a security agreement dated on or about January 24, 2007, granting LHSB a security interest in a mobile home identified as a 1997 HIG MH. Donna also signed a Commercial Guaranty and a Deed of Trust. LHSB contends that "Donna obviously knew when she signed the Security Agreement that she was making warranties and representations about her ownership of and title to the Mobile Home and that it was not titled in the joint names of herself and Jerome, contrary to the express warranty in the Security Agreement. Her admission in her affidavit that when Jerome presented her with the paperwork on the loan she decided to put the mobile home in her daughter's name

16

demonstrates that she did not intend to put the mobile home into the names of herself and Jerome as she warrants. Her conduct in transferring the mobile home to her daughter, failing to deliver the Mobile Home title to LHSB, and fighting LHSB in the District Court litigation demonstrates that she had no intention to take actions as requested by LHSB to perfect and preserve LHSB's collateral rights in the Mobile Home."

The Court agrees with Donna that LHSB has a weighty burden in this case. However, this Court does not agree that no circumstances exist under which this Court could conclude that $36,000 should be excepted from Donna's discharge under either § 523(a)(2)(A) or § 523(a)(2)(B). Donna's intent can be implied from her conduct. Furthermore, witness credibility often plays an important role in proceedings such as this. Given the allegations asserted by LHSB, the Court will enter a separate order providing as follows:

IT IS ORDERED that Defendant Donna Mae Garsjo's Motion for Summary Judgment filed August 25, 2010, at docket entry no. 28, is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

17